UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH DENOYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19 CV 2388 DDN |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Joseph Denoyer for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

**I. BACKGROUND**

Plaintiff was born in 1972 and alleged he became disabled on July 4, 2015 due to bilateral shoulder impairments following a motorcycle accident. He filed his application on November 23, 2016. (Tr. 72.) His application was denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 85-91.)

On November 7, 2018, following a hearing, an ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 27-35.) The Appeals Council denied his request for review. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to his appeal.

On July 4, 2015, plaintiff sustained injuries in a motorcycle accident.  Plaintiff saw Randall J. Otto, M.D., an orthopedist, on October 20, 2015.  An EMG showed moderate left carpal tunnel syndrome and suprascapular nerve palsy--a neuropathy in which the nerve is compressed along its course--affecting both the supraspinatus and infraspinatus muscles and with significant muscle belly atrophy and weakness.  He had fairly well-preserved range of motion (ROM) but had weakness with thumb down abduction and external rotation against resistance with atrophy of the infraspinatus and supraspinatus fossa on the left shoulder. (Tr. 385.)

On November 11, 2015, Dr. Otto performed arthroscopic suprascapular nerve release surgery on the left shoulder. (Tr. 335-36.)  By December 22, 2015, plaintiff was doing well and making improvements.  He felt weak but was able to restore motion in the arm.  He was limited to 1-pound overhead lifting and 5-7 pounds below shoulder lifting. (Tr. 342-43.)

By February 2, 2016, plaintiff's chief complaint was pain at night with a lot of aching in the shoulder and down the arm.  He was making overall improvements in physical therapy and prescribed steroids to alleviate symptoms.  On exam his ROM was near full, but he was still weak with thumb down abduction and external rotation but did have some strength against resistance.  (Tr. 346-47.)

By March 2016 his ROM was pretty good, although he complained that he couldn't sleep because of pain in his shoulder.  He reported two weeks earlier in physical therapy that his right shoulder was getting sore and the next day could not lift his arm.  He reported that after his accident both shoulders were hurt, but that surgery was only performed on the more painful left shoulder.  On exam he had full ROM bilaterally but had pain with palm up abduction. The left shoulder still had a little bit of weakness, but it was significantly

2

better with external rotation and abduction compared to his previous exam. The right shoulder had significant weakness with external rotation with positive Jobe's test, used to detect shoulder instability, on the right. (Tr. 349-50.)

On April 12, 2016, an MRI showed muscle belly changes and evidence of either myositis (muscle inflammation) or other nerve related issues. An EMG revealed suprascapular nerve palsy on the right shoulder and mild to moderate right carpal tunnel syndrome. On exam he had much improved strength with rotation on the left shoulder. His right shoulder had significant weakness with abduction and any external rotation against resistance. Atrophy was developing at the supraspinatus and infraspinatus. (Tr. 356-57, 382.)

On April 27, 2016, he underwent suprascapular nerve release surgery on his right shoulder. On September 27, 2016, he had full ROM but complained of lack of strength and feeling fatigued after four to five hours. Dr. Otto noted he was doing okay, lagging a little bit on the right, but making improvement. Dr. Otto imposed a 15-20 pound lifting restriction and more physical therapy. (Tr. 368-69, 389.)

On November 8, 2016, he reported he was unable to work more than three 5-hour shifts per week, and therefore found another part time job as a porter at a bowling alley. He was doing well initially but was now having difficulty working at this job. The pain was worse on his right than on the left. On exam he had weakness in the right arm. He was doing physical therapy (PT) at home and in-office. (Tr. 373-74.)

In a Function Report dated January 10, 2017, plaintiff reported that he could prepare his own meals; help with household chores like cleaning and laundry; drive a car; shop in stores and online; handle his own financial matters; and complete physical therapy exercises three times a day. (Tr. 217-25.)

By February 2, 2017, plaintiff felt his right shoulder strength was regressing. He was using the left arm to assist the right and was having a little more right shoulder pain. He had full range of motion of the shoulders, but decreased cervical and lumbar ROM. He

3

had weakness on the right with external rotation and abduction against any resistance.  He was taking Ultram and Percocet.  (Tr. 408-09.)

A February 6, 2017 EMG showed persistent right suprascapular neuropathy, similar to testing from April 12, 2016.  On February 17, 2017, non-examining state agency physician Judee Bland, M.D., opined that plaintiff could perform light work, but that he was limited in the right upper extremity as his recent EMG showed persistent right shoulder suprascapular neuropathy even after surgery and ten months of PT.  He had resulting weakness in the right shoulder and should not lift with that hand or reach above his head to retrieve items from shelves, especially heavy items.  He could occasionally climb ladders, ropes, and scaffolds.  (Tr. 79-80.)

On March 6, 2017, he underwent a second nerve release surgery on his right shoulder.  (Tr. 413, 787-88.)  On June 1, 2017, plaintiff was doing well overall with respect to range of motion but had some fatigue with prolonged exertion of the right shoulder.  He had been throwing a football and thought his strength was not as strong after throwing it for a prolonged period.  He thought he had somewhat plateaued in PT.  Although improved, his strength was slightly decreased on the right.  (Tr. 770-71.)

By August 15, 2017, plaintiff reported some occasional discomfort with increased activity but minimal discomfort daily.  His left shoulder was doing well.  His right shoulder continued to be weaker than the left.  (Tr. 774-75.)

By November 14, 2017, plaintiff reported worsening symptoms with strength and endurance on the right, as well as decreased lifting abilities.  He had been able to perform 20 repetitions of 15 pounds but was now back down to three-pound weights.  The left side felt about back to normal.  On exam he had right shoulder scapular dyskinesis, abnormal mobility or function of the scapula, compared to the left.  He had some atrophy of the supraspinatus and infraspinatus fossae and a nerve study was ordered.  (Tr. 777-78.)

An EMG of plaintiff's right shoulder on December 4, 2017, showed motor and recruitment abnormalities suggestive of chronic changes.  No acute denervation was noted.  His prognosis for further recovery was guarded. (Tr. 783.)

In July 2018, four months after he last saw plaintiff, Dr. Otto completed an RFC questionnaire. Dr. Otto opined that plaintiff's lifting and carrying capabilities would limit him to sedentary work, and that he would also require a 20-30 minute break in the middle of each 8-hour workday. He believed that plaintiff could occasionally lift to 10 pounds, sometimes lift to 20 pounds, and that he had no reaching, handling, or manipulative limitations. (Tr. 800-03.)

**ALJ Hearing**

On August 2, 2018, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 40-71.) He is single and lives with his mother. He has a twelfth-grade education. He has a culinary associates degree and has worked as a chef at a retirement community, as well as a manager at a convenience store. He stopped working in March 2017 when his third shoulder surgery was scheduled. After his motorcycle accident, he worked on a part-time basis at Steak-n-Shake and a bowling lane. (Tr. 44-49.)

He is unable to work because he cannot do anything repetitive with his arms and shoulders for any length of time. He spends his day on the computer looking for work and day trading. He does physical therapy three times per day at home. He stopped attending PT outside the home because it was expensive and he could do the exercises just as well at home. His current PT allows him to maintain his range of motion but does not increase his strength. No employer is willing to work with him because of his restrictions. His last job interview was in early 2016. (49-57.)

He can take care of his personal care needs. He can do dishes but cannot lift trash. Repetitive lifting causes numbness and tingling in his fingers and pain radiating down from his neck. It causes severe pain at night affecting his sleep. He cannot use a keyboard for more than 20 minutes at a time without losing sleep and experiencing extreme pain. His condition improved for a period after his surgeries when Dr. Otto approved his looking for part-time work. Part-time work did not work out because scar tissue developed doing part-time work. He needs help with significant lifting. He has adapted by changing the way he

5

does almost everything. He takes a lot of aspirin for pain. He has used some opioids, but feels they are unhealthy. (Tr. 55-62.)

A vocational expert (VE) also testified at the hearing. The ALJ asked the VE to consider a hypothetical individual limited by what would later form the ALJ's RFC finding. The VE opined that plaintiff would be capable of performing past work as a convenience store manager as defined under the DOT. (Tr. 65-66.)

### III. DECISION OF THE ALJ

On November 7, 2018, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 27-35.) At Step One of the sequential evaluation, the ALJ found plaintiff had not performed substantial gainful activity since July 4, 2015, his alleged onset date. At Step Two, the ALJ found plaintiff had the severe impairment of bilateral shoulder suprascapular neuropathy. At Step Three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 29-30.)

At Step Four, the ALJ found plaintiff had the residual functional capacity (RFC) to perform "light" work as defined under the regulations, except that he can never climb ladders, ropes or scaffolds. He can only occasionally reach overhead with his bilateral upper extremities, and occasionally crawl. With this RFC, and relying on vocation expert testimony, the ALJ found that he was able to perform his past relevant work as a convenience store manager as defined by the DOT. Consequently, the ALJ found that plaintiff was not disabled under the Act. (Tr. 30-34.)

### IV. GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than preponderance, but is enough

that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his past relevant work. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## V.   DISCUSSION

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence and in conducting a proper credibility determination.  The Court disagrees.

**Medical Opinion Evidence**

Plaintiff argues the ALJ erred in giving little weight to the opinion of Dr. Otto, his treating orthopedist.  He argues the ALJ gave "some" weight to Dr. Otto's various restrictions given at different times throughout the period at issue, but nothing in the RFC suggests any weight was accorded to any of these restrictions.  He argues the decision fails to identify which limitations some weight refers to, because they differed on each occasion. He argues that if significant weight was given to Dr. Bland's opinion, all her limitations should have been adopted or the ALJ should have stated why she was not adopting the restriction involving no lifting with the right hand.  He also argues the ALJ failed to cite evidence that shows he is capable of lifting at the light level on a regular and continuing basis.

Residual Functional Capacity is a function by function assessment of an individual's ability to do work related activities based on all the evidence.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of his limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 18 (8th Cir. 2001). Ultimately, the RFC is a medical question, which must be supported by medical evidence contained in the record.  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

An ALJ considers conflicting opinion evidence and resolves disagreements among sources. *See Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014); 20 C.F.R. § 404.1527. Ultimately, interpreting a physician's findings is a factual matter left to the ALJ's authority. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).  If the ALJ discounts a treating

physician's opinion, she should give "good reasons" for doing so. *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). The ALJ gave good reasons here.

In this case, the ALJ determined that plaintiff had the RFC to perform light work, except that he could never climb ladders, ropes or scaffolds. He could occasionally reach overhead with his bilateral upper extremities, and occasionally crawl. (Tr. 26.) The ALJ here assessed medical opinions regarding the extent of plaintiff's impairment. The ALJ considered Dr. Bland's opinion from February 2017, stating plaintiff could perform light work, with additional limits on climbing and overhead reaching. (Tr. 33, 79-81). Because Dr. Bland's opinion was consistent with the record evidence, the ALJ afforded it significant weight. (Tr. 33). *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ also considered several opinions from Dr. Otto, consisting of temporary lifting restrictions over a period in response to his changing symptoms and abilities. Plaintiff testified at the hearing that Dr. Otto's restrictions were transitory and changed with every visit. (Tr. 52.) The ALJ recognized that none of Dr. Otto's opinions provided an ongoing assessment of plaintiff's functional capacity over a duration that would meet the Administration's 12-month requirement, and therefore, his opinions warranted only some weight. (Tr. 33.)

In July 2018, four months after his last appointment, Dr. Otto completed an RFC questionnaire. Dr. Otto opined that plaintiff's lifting and carrying capabilities would limit him to sedentary work, and that he would require a 20-30 minute break in the middle of each 8-hour workday. Dr. Otto indicated that plaintiff could occasionally lift up to 10 pounds, sometimes lift up to 20 pounds, and had no reaching, handling, or manipulative limitations of any kind. (Tr. 800-01.) The ALJ gave his opinion little weight because Dr. Otto's limitations were inconsistent with the objective record, as well as his own prior opinions, the most recent of which did not include any lifting limitations. (Tr. 33.)

Accordingly, in her discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record. *See Martise v. Astrue*, 641 F.3d 909, 927

(8th Cir. 2011) (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).

To the extent plaintiff is arguing that the ALJ erred in crediting Dr. Bland's opinion over that of Dr. Otto, because Dr. Bland was not a treating physician, this argument fails. Although a lengthy treating relationship is generally favored, an ALJ's weighing of medical opinion evidence requires more than considering the number of medical appointments. *See Chaney v. Colvin*, 812 F.3d 672, 679 (8th Cir. 2016) (in order to control, a treating physician's opinion must be evaluated in the context of the entire record and must not be inconsistent with other substantial evidence). The ALJ may afford more weight to opinions from state agency consultants such as Dr. Bland, over those from treating sources such as Dr. Otto. *See Mabry v. Colvin* , 815 F.3d 386, 391 (8thCir. 2016) (proper for ALJ to rely on state agency physicians' opinions, in part, in formulating RFC).

Plaintiff asserts that Dr. Otto's RFC statement was not inconsistent with the many temporary restrictions placed on him starting in December 2015. However, given that Dr. Otto's restrictions fluctuated, it is unclear which restrictions plaintiff is referring to. Thus, the ALJ's statement that Dr. Otto's most recent notes did not have a lifting restriction at all, referring to opinions from November and December 2016, was correct. (Tr. 33, 228-29.) In contrast, Dr. Otto's July 2018 opinion indicated plaintiff could lift 10 pounds occasionally, and rarely as much as 20 pounds, and that he had no reaching limitations at all. (Tr. 33, 801.) Because a restriction to 20 pounds is not the same as no restriction at all, this argument fails.

In 2018, Dr. Otto believed plaintiff would require "unscheduled" 20-30 minute breaks every four hours during a regular workday. The ALJ explained that as a practical matter such breaks could be accommodated during a lunch break and at the end of a shift. (Tr. 33, 800.) Plaintiff finds error in the ALJ's statement. However, even assuming an error existed, any error is harmless because the ALJ did not credit that portion of Dr. Otto's opinion. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) (courts must consider whether

agency errors are harmless by using "case-specific application of judgment, based upon examination of the record.").

Plaintiff further asserts that his full range of motion and ability to throw a football are not inconsistent with Dr. Otto's opinion. However, plaintiff's improved range of motion speaks to the effectiveness of his surgeries and therapy. His ability to throw a football undermines the consistency of his subjective claims. Thus, the ALJ properly considered these factors in reaching a decision.

It was within the ALJ's discretion to afford some weight to Dr. Otto's temporary lifting restrictions. Dr. Otto's restrictions were temporary and variable, while the ALJ's decision addressed the entire relevant period. The ALJ acknowledged that plaintiff had some degree of restrictions beyond light work, as reflected in the RFC, by giving Dr. Otto's opinion some weight. (Tr. 30, 33.)

Plaintiff also takes issue with Dr. Bland's opinion because it was submitted well before the end of the relevant period, relying on *Frankl v. Shalala*, 47 F.3d 935 (8th Cir. 1995). In *Frankl*, the court found the ALJ erred because there was no medical evidence of the claimant's RFC at the time of the Commissioner's decision, after which the claimant submitted new evidence for review by the Appeals Council. 47 F.3d at 938-39. There the Commissioner erred by relying on "outdated" evidence relative to the more recent, newly supplied evidence that was never before the ALJ. Such is not the case here because no issue has been raised regarding additional evidence submitted after the hearing.

Dr. Bland's opinion is dated February 2017, more than 18 months after plaintiff's July 4, 2015 alleged onset date, and within the relevant period. The lifting limitations imposed by Dr. Otto are from December 2015 and December 2016, older than Dr. Bland's opinion. The ALJ evaluated the opinion within the record as a whole, including the record evidence added after the opinions themselves were formed. *See Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d. Cir. 2011) (as state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and

decision; the regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it).

Plaintiff further contends that because the ALJ gave significant weight to Dr. Bland's opinion, she was required to adopt all of it, or explain why parts were not included in the RFC. However, the ALJ did not indicate she intended to adopt any opinion in full, nor was she under any obligation to do so. *See, e.g., Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ indicated that she found Dr. Bland's opinion generally supported by the evidence on the whole, even though it differed in some respects from her ultimate RFC determination. (Tr. 30, 80.) In light of an ALJ's responsibility to evaluate opinion evidence in the context of the entire record, such a finding was within her discretion. *See Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998).

Plaintiff seems to ask the ALJ to meet a level of articulation not required by law. A court must review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations but does not require an ALJ to mechanically list and reject every possible limitation. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (while SSR 96-8p requires an ALJ to explain each conclusion reached, it does not require an ALJ to cite specific record evidence to justify every part of the RFC determination).

Based on the above, the Court concludes the ALJ properly considered the severity of plaintiff's alleged impairments, gave good reasons to support her finding that plaintiff's subjective reports were less than fully consistent, and evaluated the opinion evidence.

**Credibility Evaluation**

Part of an RFC determination includes an assessment of the claimant's credibility regarding subjective complaints. Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler* , 739 F.2d 1320, 1322 (8th Cir. 1984) ; *see also Lowe v. Apfel* , 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints). In addition to the claimant's prior work record, the *Polaski* factors include (1)

12

the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski* , 739 F.2d at 1322 ; *see also* 20 C.F.R. § 404.1529.

Plaintiff argues the ALJ erred in evaluating his credibility.  He argues the ALJ failed to consider and discuss the factors in *Polaski*.  In support, he cites his demonstrated work record, his testimony that his symptoms were exacerbated by repetition with his arms, and that the record evidence shows that his symptoms are exacerbated when he lifts heavier weights and for days following the activity.  Also contends the ALJ erred in placing significant weight on his activities of daily living as evidence demonstrating inconsistencies between his allegations of disabling symptoms.  He notes that many of the activities referenced by the ALJ involve plaintiff lifting heavy objects, thus concluding he can perform lifting beyond the sedentary level.  He argues that this evidence merely shows isolated events where lifting heavy objects resulted in increased pain and soreness afterwards, and that none of the activities mentioned show his ability to perform work-like activities consistently on a daily basis.  The Court disagrees.

The ALJ found that plaintiff remained able to perform his past relevant work as a convenience store manager, as generally performed in the national economy.  The ALJ reached this decision at Step Four, relying on VE testimony.  (Tr. 34.)   In posing such questions to a vocational expert, an ALJ need include only those impairments that the ALJ finds are supported by the record as a whole.  *See Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014).  When weighing testimony, an ALJ may consider several factors, including the medical findings.  *See SSR* 16-3p ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.").

It is well established that an ALJ need not explicitly address each of the *Polaski* factors, so long as a proper substantive analysis is conducted.  *See, e.g., Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (If the ALJ discredits a claimant's credibility and gives

a good reason for doing so, the reviewing court will defer to his judgment even if every factor set forth in *Polaski* is not explicitly discussed). The ALJ's decision met this standard.

While the ALJ found plaintiff's allegations were not fully supported by the record evidence, the ALJ recognized and discussed the ongoing nature of his condition and accounted for his credible limitations. The ALJ identified several contradictions that undermined plaintiff's testimony including his ongoing work activity, efforts seeking new employment, and collection of unemployment compensation during the period he claimed he was unable to work. The ALJ also noted plaintiff was able to throw a football, row a boat, lift a dresser and mattress, move heavy boxes and furniture, and clean his garage during the relevant period. (Tr. 29, 31-34, 44, 46, 48-51, 56, 164-70, 472, 608, 613, 672, 770). Although plaintiff claims these were isolated events, they are numerous. Nor does plaintiff claim such evidence was inaccurate.

Based on these factors, the ALJ determined that plaintiff's subjective reports were inconsistent with the record as a whole. While the ALJ did account for some of plaintiff's symptoms in limiting him to a restricted range of light work, she declined to find that his RFC was as limited as he alleged. *See Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) (RFC need only include limitations that are supported by and consistent with the record as a whole). Therefore, this Court concludes that the ALJ's determination of plaintiff's RFC is supported by substantial evidence.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                             /s/ David D. Noce
                                     **UNITED STATES MAGISTRATE JUDGE**

Signed on July 10, 2020.